**John F. RAY, Sr., et al., Plaintiffs-Appellants,**

v.

**INDIANA & MICHIGAN ELECTRIC COMPANY, an Indiana Corporation, Defendant-Appellee.**

**No. 84–1990.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1985.
Decided Feb. 19, 1985.*
Opinion April 3, 1985.

Carl D. Overman, Dutton, Kappes & Overman, Douglas B. McFadden, Indianapolis, Ind., for plaintiffs-appellants.

Thomas W. Yoder, Livingston, Dildine, Haynie & Yoder, Fort Wayne, Ind., for defendant-appellee.

Before BAUER, COFFEY and FLAUM, Circuit Judges.

PER CURIAM.

Plaintiffs, residential purchasers of electric power in the Fort Wayne, Indiana area, brought suit against the defendant, Indiana & Michigan Electric Company (I&M), alleging that I&M's acquisition of the City of

---

* This appeal was decided by an unpublished order on February 19, 1985 pursuant to Circuit Rule 35. The court subsequently has decided to issue this decision as an opinion.

Fort Wayne's municipal utility (City Light) and subsequent actions by I&M violated the Sherman Anti-Trust Act, 15 U.S.C. § 1 *et seq.* (1975). After a bench trial, the district court entered judgment for the defendant, and plaintiffs now appeal that judgment. We affirm.

The lengthy facts in this case are cogently and thoroughly addressed by the trial judge, whose findings we adopt. *See* Mem. Op., May 11, 1984, 606 F.Supp. 757. We will only briefly summarize them here for the purposes of this appeal. City Light, owned and operated by the City of Fort Wayne, began supplying electricity to the city and its surrounding area in 1909. In 1948, I&M became a competing supplier of electricity in the Fort Wayne area through its purchase of an existing utility. In 1953, City Light began purchasing wholesale electric power from I&M pursuant to a series of requirement contracts. The amount of wholesale electric power which City Light purchased from I&M through these contracts steadily increased as the city and the demand for electricity grew and City Light's physical plant remained at its original size. By 1974, City Light generated only 11% of its requirements, purchasing the balance wholesale from I&M.

In the mid-1960's, the city commissioned studies to determine the feasibility of expanding and modernizing City Light. One study favored and another opposed expansion. I&M opposed expansion of City Light and offered to increase the amount of wholesale electric power available to City Light at a rate as low as any available to I&M's other municipal or large industrial customers. At least one public meeting was held to discuss the issue. The Fort Wayne Common Council then approved contracts for the construction of two new generators for the City Light plant. The Common Council later voted, however, to reject issuing bonds to raise the money to build the generators, and instead entered into a new contract with I&M to purchase more wholesale electric power.

On September 13, 1974, the city leased City Light's entire physical plant to I&M for a period of 35 years. Pursuant to the lease all retail customers of City Light became customers of I&M. The lease was approved by the Indiana Public Service Commission and became effective on March 1, 1975. At about this time I&M also began construction of a new headquarters in downtown Fort Wayne.

Before the signing of the lease, the rates I&M charged in the Fort Wayne area were different from the rates I&M charged elsewhere. Residential customers in Fort Wayne who used less than 1000 kilowatt hours per month were charged at a lower rate than similar customers outside Fort Wayne. Residential customers outside Fort Wayne who used more than 1000 kilowatt hours per month, however, were charged at a lower rate than residents of Fort Wayne who used over 1000 kilowatt hours per month. The lease with City Light did not change this relationship between I&M's rates. In 1977, however, the Indiana Public Service Commission found that the rate differential was unfair and ordered I&M to file a uniform rate for all its residential customers regardless of their geographic location. I&M had also filed for two rate increases with the Indiana Public Service Commission after the lease was signed. These rate increases were approved and resulted in substantially higher rates for all I&M's customers.

At trial, plaintiffs argued that I&M had engaged in "predatory activity" in violation of the Sherman Act in order to eliminate its only competitor in the Fort Wayne area, City Light, and that its success in doing so damaged the plaintiffs by resulting in higher rates for electricity in the Fort Wayne area. Specifically, plaintiffs alleged that I&M prevented the expansion of City Light to create a greater dependency on I&M for electric power, charged excessive rates for the wholesale electric power it sold to City Light, threatened to remove its headquarters from Fort Wayne if the lease was not executed, and obtained rate increases not included in the lease.

The trial judge found that City Light did not expand because of the city's long-stand-

ing failure to invest in the utility's physical plant and that I&M's opposition to the expansion proposed in the 1960's was "fair and above board." Mem.Op. at 11, para. 23. Similarly, the trial judge found that City Light's increasing dependence on I&M resulted from the city's policy of allowing the physical plant to deteriorate and the fact that by 1970 or 1971 it was cheaper for City Light to buy all of its power from I&M rather than to continue its own operation. *Id.* at 12–13, para. 24. The trial judge used both a "transfer price" and "rate of return" analysis to evaluate the rates I&M charged City Light, and found that I&M's rate structure was fair and did not impose a price squeeze on City Light. *Id.* at 25, para. 44. Furthermore, the lease entered into in 1975 was suggested by Fort Wayne's mayor in 1972, and was approved by the Common Council, the Indiana Public Service Commission, and the voters of Fort Wayne in a referendum. *Id.* at 17–18, paras. 34, 35. The trial judge did not find that the lease was unfairly negotiated or executed, or that its terms were anticompetitive. The trial judge found that the rate increases obtained after the execution of the lease were also fair and were approved by the Indiana Public Service Commission. Finally, the trial judge found that I&M did not threaten to move its headquarters if the lease was not approved. *Id.* at 21, para. 38. To the contrary, it appears that the mayor used the City's approval of the lease as a bargaining chip to commit I&M to construct a new headquarters in an underdeveloped area of Fort Wayne. *Id.* at 20–21, para. 37.

■ We find that the trial judge's findings of fact are fully supported by the record in this case and affirm his conclusions of law that I&M did not engage in conduct prohibited by the Sherman Act and that, notwithstanding the legality of I&M's conduct, plaintiffs failed to show any injury as a result of that conduct. We find that the trial judge reached his conclusions of law in view of all the evidence, not by examining I&M's actions individually, as plaintiff suggests, and reject plaintiffs' multifarious arguments for overturning the judgment. Only plaintiff's argument that the trial judge erred by failing to give collateral estoppel effect to certain issues litigated in *City of Mishawaka v. American Electric Power Co., Inc.,* 465 F.Supp. 1320 (N.D.Ind.1979), *affirmed in part, vacated in part,* 616 F.2d 976 (7th Cir.1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 892, 66 L.Ed.2d 824 (1981) merits further attention in this order.

■ For a party to invoke the doctrine of collateral estoppel, four conditions must be established: 1) a final determination on the merits has been reached in a case, 2) the issues for which estoppel is sought were essential to that decision, 3) the party against whom estoppel is invoked had a full opportunity to address the issues in that case, and 4) the issues are identical to the issues in the case in which estoppel is sought. *See Parklane Hosiery v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Continental Can Co. v. Marshall,* 603 F.2d 590, 593–96 (7th Cir.1979). The Supreme Court, in *Parklane Hosiery,* added that when collateral estoppel is sought offensively the trial judge has broad discretion to determine whether it should be applied, and may take into account the fairness of invoking it against a defendant. *Parklane Hosiery,* 439 U.S. at 331.

■ We hold that the trial judge's decision to deny plaintiffs' use of collateral estoppel in this case was within his broad discretion. First, it is not clear that plaintiffs were unable to join as parties in *Mishawaka.* Furthermore, as the trial judge noted, the City of Fort Wayne was not a party in *Mishawaka* and the "price squeeze" issue litigated there did not involve I&M's rates or its activities in the Fort Wayne area. Thus, the issues in this case were not necessary to, or even a part of, the court's decision in *Mishawaka.* Moreover, I&M did not present any evidence in *Mishawaka,* and had no incentive in that case to litigate the issues which plaintiffs presented in this case. Therefore, the trial judge had ample reason to

hold that giving collateral estoppel effect to *Mishawaka* would be inappropriate in this case, and he did not abuse his discretion by so holding. The judgment of the trial court is affirmed.

AFFIRMED.