Armond COSEY, Plaintiff,

v.

CITY OF CHICAGO, and Robert Cargie, Star # 7572, Defendants.

No. 97 C 6808.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 2, 1999.

Janine L. Hoft, People's Law Offices, Chicago, IL, for Armond Cosey.

Brian L. Crowe, Sharon Baldwin, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, Allen Duarte, City of Chicago, Department of Law, Chicago, IL, for City of Chicago.

Christopher Sean Hennessy, Michael P. Sheehan, City of Chicago, Department of Law, Chicago, IL, Steven M. Yarosh, City of Chicago, Law Department, Chicago, IL, for Robert Cargie.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Plaintiff Armond Cosey (hereinafter "Plaintiff") brought this civil rights action pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the Constitution alleging excessive force and false arrest against Defendants City of Chicago and City of Chicago Police Officer Robert Cargie (hereinafter "Defendants").[1] Plaintiff also asserts state law claims against Police Officer Cargie for a hate crime, assault and battery as well as

1. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(3). *(See Final Pretrial Order at 1.)*

derivative claims against the City of Chicago.[2]

Plaintiff filed this motion for summary judgment on a collateral estoppel theory asserting (1) that Defendants liability for alleged civil rights violations under 42 U.S.C. § 1983 was established when an internal police department disciplinary investigation determined that Officer Cargie violated two departmental rules, and (2) that issues regarding 42 U.S.C. § 1983 civil rights liability are precluded from being relitigated in federal court because the Chicago Police Department, in its role as an administrative agency, adjudicated this matter when it issued its disciplinary findings against Officer Cargie. This Court denies Plaintiff's motion for summary judgment on the issue of liability for the reasons set forth below.

## BACKGROUND FACTS

On August 9, 1993, Plaintiff, then age 14, was at his home located at 3544 West Cermak Avenue in Chicago, Illinois. *(See Pl.'s 12(M) Statement ¶ 8.)* At the time, Plaintiff's father had two cars parked in the backyard behind the house at 3544 West Cermak Avenue in Chicago, Illinois. *(See Pl.'s 12(M) Statement ¶ 9.)* On August 9, 1993, two tow truck workers arrived at the Plaintiff's house and indicated they would tow one of the Plaintiff's cars from the back of the house. *(See Pl.'s 12(M) Statement ¶ 10).* Plaintiff and his cousin Lamont Lewis (hereinafter "Lewis"), age 13, were asked by a tow truck worker to move a car that was blocking the abandoned car which was to be towed. *(See Pl.'s Ex. B, Summary Report Complaint Register (C.R.) No. 202687 at 3.)* Both Plaintiff and Lewis told the tow truck drivers that they could not move the car and that they would have to wait until Plaintiff's father came home with the keys. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 3.)* One of the tow truck drivers then called the police. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 3.)*

Officer Cargie, Star # 7572, responded to the call and arrived at the scene at Plaintiff's house located at 3544 West Cermak Avenue.

*(See Pl.'s 12(M) Statement ¶ 11.)* When Officer Cargie arrived, he examined the tow truck driver's paperwork and found that the men had a legitimate assignment. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 5.)* Officer Cargie approached Plaintiff and Lewis and asked them why they were impeding the work of the tow truck drivers. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 5.)* Officer Cargie told Plaintiff and Lewis to get off of the car on which they had been sitting and leaning on. *(See Pl.'s Ex. B, Complaint Review Panel Hearing of C.R. No. 202687 at 2.)* Officer Cargie alleged that the youths refused to move off of or from the car and that he became more authoritative and directed them to move after one of youth used profanity. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 5.)*

Officer Cargie avers that he grabbed the Plaintiff under the upper arm and then by the wrist and brought him towards his car. This did not require much force. *(See Defs.' 12(N) Statement ¶ 12; Pl.'s Ex. A, Cargie Dep. at 50.)* Officer Cargie alleges that when he placed Plaintiff in his car, he "[p]ut his seat down, his bottom down, and then just bent him a little by the head and put his feet in." *(See Pl.'s 12(M) Statement ¶ 12; Pl.'s Ex. A, Cargie Dep. at 53.)* Officer Cargie warned Lewis that he would be next if he did not cooperate and then put him in the back of the squad car next to Plaintiff. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 5.)* Officer Cargie left Plaintiff and Lewis in the back of the squad car until the tow truck drivers had finished towing the car. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 5).* The youth were released to Lewis' stepfather approximately fifteen minutes later when he arrived at the house. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 3.)*

Plaintiff alleges different facts stating that when Officer Cargie arrived at the scene and told the youths to get off of the car, they did as they were told. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 3.)* Plaintiff and Lewis then went over to a garbage can

---

**2.** Because this action brings state law claims, this Court maintains jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a). *(See Final Pretrial Order at 1–2.)*

and told Officer Cargie that the tow truck driver would have to wait until Plaintiff's father came home in order for them to tow the car out of the way. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 3.)* Plaintiff, who is African American, alleges that Officer Cargie then began yelling vulgar, racist, hate-filled names. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 3.)* Officer Cargie then grabbed Lewis by his right hand and twisted it behind his back, banged Lewis' head twice against a garbage can, handcuffed him and threw him into the back of the squad car where he stayed until his stepfather came and got him. *(See Pl.'s Ex. B, Complaint Review Panel Hearing of C.R. No. 202687 at 2.)*

According to Plaintiff, Officer Cargie next grabbed Plaintiff by the arm and pulled it behind him and then banged his left shoulder against the squad car. *(See Pl.'s Ex. B, Complaint Review Panel Hearing of C.R. No. 202687 at 2.)* Officer Cargie then threw Plaintiff into the back of the squad car next to Lewis. *(See Pl.'s Ex. B, Summary Report C.R. No. 202687 at 3.)* On August 9, 1993, subsequent to Officer Cargie's actions, Plaintiff was treated at the Lawndale Christian Health Center for a cut on his hand, headaches and trauma resulting in a bruise over his left shoulder. *(See Pl.'s 12(M) Statement ¶ 14; Pl.'s Ex. B, C.R. No. 202687, Attach. 11A.)*

Subsequently, the Chicago Police ("OPS") Department's Office of Professional Standards (OPS) initiated an investigation into the incident which occurred between the parties on August 9, 1993 behind 3544 West Cermak Avenue, Chicago, Illinois. *(See Pl.'s 12(M) Statement ¶ 15; Pl.'s Ex. B, C.R. No. 202687.)* On September 10, 1993, Officer Cargie gave a statement to the OPS, in the context of their investigation, and he was represented by an attorney of his choice. *(See Pl.'s 12(M) Statement ¶ 16; Pl.'s Ex. B, C.R. No. 202687, Attach. 21.)* The OPS sustained allegation number one against Officer Cargie and entered the following finding: Violation of Rule No. 8—"Disrespect to or maltreatment or any person while on or off duty," in that on August 9, 1993 at 3544 West Cermak in the alley, Officer Cargie banged

the shoulder of Plaintiff against his squad car. *(See Pl.'s 12(M) Statement ¶ 17; Pl.s Ex. B, Summary Report C.R. 202687 at 7.)* The OPS sustained allegation number two against Officer Cargie and entered the following finding: Violation of Rule No. 9—"Engaging in any unjustified verbal or physical altercation with any person, while on or off duty," in that on August 9, 1993, at 3544 West Cermak, Officer Cargie called Plaintiff a "nigger." *(See Pl.'s 12(M) Statement ¶ 18; Pl.'s Ex. B, Summary Report C.R. No. 202687 at 7).*

The OPS recommended that Officer Cargie be suspended for a period of three days for violation of department rules on August 9, 1993 at 3544 West Cermak Avenue. *(See Pl.'s 12(M) Statement ¶ 19; Pl.'s Ex. B, Complaint Review Panel Hearing of C.R. No. 202687.)* The Department's Command Channel Review concurred with the findings and penalty. *(See Pl.s 12(M) Statement ¶ 19; Pl.'s Ex. B, Complaint Review Panel Hearing of C.R. No. 202687 at 1–2.)* Officer Cargie requested and received a hearing before the Complaint Review Panel on the findings and penalty. *(See Defs.' 12(N) Statement ¶ 18(a)—renumbered; Pl.'s Ex. B, Complaint Review Panel Hearing of C.R. No. 202687 at 1–7.)* Officer Cargie addressed the Complaint Review Panel and his union representative was allowed to ask questions and make a closing argument. *(See Defs.' 12(N) Statement ¶ 19(a)—renumbered; Pl.'s Ex. B, Complaint Review Panel Hearing of C.R. No. 202687 at 1–7.)* The Complaint Review Board then submitted its recommendations to the Superintendent of Police. *(See Defs.' Ex. E, Rowan Aff. ¶ 5.)*

On February 22, 1996, Superintendent of Police Matt Rodriguez entered a suspension notification indicating, *inter alia,* "It has been determined that Police Officer Robert Cargie, Star No. 7572, assigned to the 10th district, violated Department Rules 8 . . . and 6, in that on August 9, 1993, the said member banged the shoulder of a male individual against his squad car . . . failed to follow the provisions of General Order 92–5, IV.6 which required him to get permission from a supervisor before releasing detainees." *(See Pl.'s*

*12(M) Statement ¶ 20; Pl.'s Ex. C, Chicago Police Department Suspension Notification.)*[3]

Officer Cargie brought a formal grievance against the City of Chicago and agreed to accept a two day suspension as a full and complete settlement of all claims raised or which could have been raised. *(See Defs.' 12(N) Statement ¶ 20(a)—renumbered; Pl.'s Ex. D, Settlement Agreement, Union Grievance 765–96–003/213.)* Officer Cargie served a two day suspension as a result of the OPS investigation of the incident with Plaintiff on August 9, 1993. *(See Pl.'s 12(M) Statement ¶ 22; Pl.'s Ex. A, Cargie Dep. at 118).*

### LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir.1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor". *Vanasco v. National–Louis Univ.*, 137 F.3d 962, ——, 1998 WL 81458, at *2 (7th Cir.1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere alle-

gations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also LINC*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### ANALYSIS

**I. The Chicago Police Department's Disciplinary Proceedings Herein Did Not Constitute A Determination By A Judicial Body.**

Defendants initially argue that collateral estoppel is inapplicable herein as Officer Cargie's case has never been presented to an agency acting in a "judicial capacity." The Court agrees.

A court may preclude a plaintiff from relitigating an issue if that issue was resolved in a state administrative proceeding. *Buckhalter v. Pepsi–Cola General Bottlers, Inc.*, 820 F.2d 892, 897 (7th Cir.1987). In *University of Tennessee v. Elliott*, the Supreme court stated:

> When a State agency acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts.

*University of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). *See also Wilson v. City of Chicago*, 900 F.Supp. 1015, 1025 (N.D.Ill.1995); *Crot v. Byrne*, 646 F.Supp. 1245, 1255 (N.D.Ill.1986),

---

**3.** It also appears that the Superintendent decided to strike the alleged violation(s) pertaining to Rule 9 (the unauthorized racial epithet). *(See Defs.' Ex. E, Rowan Aff. ¶ 5; Pl.'s Ex. C, Chicago Police Department Suspension Notification.)* The Plaintiff, however, disputes that this striking by the Superintendent occurred. *(See Pl.'s Res. to Defs.' 12(N) Statement of Additional Facts ¶ 34).*

aff'd, 957 F.2d 394 (7th Cir.1992); *Falk v. Cook County Sheriff's Office,* 904 F.Supp. 797, 803 (N.D.Ill.1995). Specifically, with respect to a Section 1983 claim, to determine if preclusive effect can be given to an administrative agency decision, the court must determine: (1) whether the administrative agency acted in a "judicial capacity"; (2) whether the party had an adequate opportunity to litigate the issues before the agency; and (3) whether the agency resolved disputed issues of fact properly before it. *Buckhalter,* supra, at 895.

The Seventh Circuit has held that "an agency acts in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memorandum of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law." *Reed v. AMAX Coal Co.,* 971 F.2d 1295, 1300 (1992). *See also Czajkowski v. City of Chicago,* 1993 WL 11896, \*3 (Jan. 19, 1993).

As seen, Defendants threshold argument against collateral estoppel/summary judgment, essentially, is that the Chicago Police Department's investigation and determination of disciplinary violations against Officer Cargie did not constitute action in a "judicial capacity." *(See Defs.' Mem. in Opp'n to Pl.'s Mot. for Summ. J. at 4.)*

■ OPS initiated its investigation against Officer Cargie when a complaint was filed by Yvonne Cosey and Donna Boyce with the Department on behalf of the Plaintiff and Lewis. In response to that complaint, OPS Investigator Linda Payne was assigned to conduct an investigation which consisted of a series of interviews and statements from complainants, witnesses and Officer Cargie. In addition, Investigator Payne gathered other relevant documents pertinent to the investigation. Following this process, Investigator Payne prepared a written report classifying Officer Cargie's conduct as violating Department Rules 6, 8 and 9. Subsequently, OPS recommended that Officer Cargie be suspended for three days. *(See Defs.' Ex. D, Summary Report C.R. No. 202687.)*

During this investigatory process, Officer Cargie was not permitted to engage in discovery, submit memorandum of law, examine and cross-examine witnesses, introduce exhibits and object to evidence nor did this process provide for any kind of hearing whatsoever. *(See Defs.' Ex. A, Addendum No. 3 to General Order No. 93–3, Sec. II(C).)* In short, the OPS investigation failed to provide procedural safeguards similar to those used by courts of law and failed to culminate in final findings of fact and conclusions of law as required by an adjudicatory process.

The next stage of Officer Cargie's investigation consisted of Command Channel Review. In this instance, Investigator Payne's report was forwarded up the chain of command with each superior officer either concurring or not-concurring with the recommendations contained in the report. At this stage, no additional investigation was conducted because the process only provided for review and approval of Investigator Payne's recommendations. Officer Cargie again was not permitted to engage in discovery, submit memorandums of law, examine and cross-examine witnesses, introduce exhibits and object to evidence. Additionally, this process did not provide for any type of adjudicatory hearing. *(See Defs.' Ex. A, Addendum No. 4 to General Order No. 93–3, Sec. II(G).)* Similar to the OPS investigation, the Command Channel Review failed to provide procedural safeguards used by courts and did not result in producing final findings of fact and conclusions of law. Neither process satisfies the requirements of a "judicial" proceeding.

Each officer in the Command Channel Review concurred with Investigator Payne's recommendations. As a result, Officer Cargie was told that he would receive a three day suspension for violating Rules 6, 8 and 9. *(See Defs.' Ex. G, Command Channel Review C.R. No. 202687; Summary Report C.R. No. 202687.)* Because Officer Cargie's suspension was less than 30 days, he had the option of requesting a Complaint Review Panel hearing. *(See Defs.' Ex. A, Addendum No. 4 to General Order No. 93–3, Sec. II(I).)* Officer Cargie exercised this option and the disciplinary allegations against him were reviewed by the Complaint Review Panel on

July 10, 1995. *(See Defs.' Ex. G, Complaint Review Panel Hearing of C.R. No. 202687.)* As part of the review process, the Complaint Review Panel will consider investigative reports, statements, previous disciplinary and complimentary history, and such other evidence it deems appropriate to the issues. The Panel will hear the plea of any accused member who wishes to be heard, and at its discretion may order an accused member or any other member of the Department to appear. *(See Defs. 12(N) Statement of Additional Facts ¶ 21; Defs.' Ex. A, Addendum No. 4 to General Order No. 93–3, Sec. II(I).)*

The Complaint Review Panel is an investigatory body with advisory powers only. The Panel does not provide the accused with an opportunity to examine or cross-examine witnesses or to present memoranda of law. The Panel also has no power to subpoena witnesses. Because the Panel has no adjudicatory powers, it is not authorized to reach final findings of fact and conclusions of law. Rather, the Panel is limited to making recommendations to the Superintendent of Police. The Superintendent can accept, reject or modify the Panel's recommendations. *(See Defs.' Ex. A, Addendum No. 4 to General Order No. 93–3, Sec. II(I); Defs.' Ex. E, Rowan Aff. ¶ 7, ¶ 8, and ¶ 9.)* Accordingly, the Panel does not possess those powers required of an agency to be considered a judicial body and lacks required procedural safeguards. *See Grabinger v. Conlisk,* 320 F.Supp. 1213, 1219 (N.D.Ill.1970) (holding that the refusal to allow a Chicago police officer counsel at a Complaint Review Panel hearing does not constitute a denial of due process, as the Panel is an investigative rather than an adjudicative body, it cannot reach final conclusions, and it is limited to recommending a future course of action.)

The Complaint Review Panel concurred with the OPS investigator's recommendation that Officer Cargie violated Department Rule 6 which required him to obtain his supervisor's permission prior to releasing detainees. However, with respect to the OPS investigator's recommendation that Officer Cargie violated Department Rule 8 (prohibiting maltreatment of any person) and Rule 9 (prohibiting unjustified verbal altercation with any person), the Complaint Review Panel recommended that these findings not be sustained. *(See Defs.' Ex. G, Complaint Review Panel Hearing of C.R. No. 202687 at 8–9.)*

The Complaint Review Panel recommendations were next submitted to the Superintendent of Police for review and final decision. As is pertinent here, the Superintendent modified the Panel's recommendations and ordered that Officer Cargie be suspended for three days for violating Department Rules 6 and 8.[4] *(See Defs.' Ex. H, Suspension Notification C.R. No. 202687.)* The Superintendent's final decision was based on a review of the existing records and reports and no further investigation was conducted. Officer Cargie was not permitted to engage in discovery, submit memorandums of law, examine and cross-examine witnesses, introduce exhibits or object to evidence. Additionally, the process did not provide for any type of hearing. Like every preceding stage in the disciplinary process, Officer Cargie was not afforded any of the procedural safeguards or findings of fact employed by courts of law. Accordingly, the Superintendent's review and order did not satisfy the requirements of an adjudicatory process.

It bears mention that this was not a case heard by the separate, Chicago Police Board. The Chicago Police Board has no jurisdiction to review the suspension of an accused when, as here, the suspension is 6 days or less. *(See Defs.' 12(N) Statement of Additional Facts ¶ 29; Defs.' Ex. B, City of Chicago, Department of Police Rules and Regulations at 34; Defs.' Ex. F, Iris Aff. ¶ 15.)* The mention of this distinction is significant, as courts have held (for estoppel purposes) that in certain instances proceedings of the Chicago Police Board qualify under the previously recited criteria as agency action in a "judicial capacity." *See Banks v. Chicago Housing Authority,* 13 F.Supp.2d 793, 796 (1998); *Wilson v. City of Chicago,* 900 F.Supp. 1015, 1024 (N.D.Ill.1995); *Czajkowski v. City of Chicago,* 810 F.Supp. 1428, 1434

---

4. As stated, the parties are in dispute as to the Superintendent's decision as to Rule 9. Resolution of this dispute is not necessary for purposes of this motion.

(N.D.Ill.1992). As Officer Cargie's suspension herein only involved two or three days, the separate Chicago Police Board had no jurisdiction. A Chicago Police Board case like *Czajkowski,* cited by the Plaintiff, thus is of no avail to the Plaintiff here.

### CONCLUSION

As a threshold matter, under the case circumstances (particularly considering summary judgment standards), it has not been appropriately established that Officer Cargie's internal discipline case was presented to an agency acting in a judicial capacity.[5]

Accordingly, Plaintiff's collateral estoppel motion for summary judgment on the issue of liability is denied.

---

5. In view of the Court's holding, it is not necessary to consider Defendants' second summary judgment response contention that violation of internal Police Department rules does not conclusively establish a violation of law.